Ronald SANTELLA, Plaintiff,

v.

Richard GRISHABER and City of Chicago, Defendants.

No. 86 C 6223.

United States District Court, N.D. Illinois, E.D.

Feb. 17, 1987.

John L. Gubbins, Chicago, Ill., for plaintiff.

Patricia M. Carroll, Mary Smith, Asst. Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Ronald Santella ("Santella"), a Chicago Police Department ("CPD") employee, has sued Richard Grishaber ("Grishaber"), Director of CPD's Motor Maintenance Division ("Division"), and the City of Chicago ("City"), charging defendants breached an employment agreement and violated 42 U.S.C. § 1983 ("Section 1983") by:

1. depriving Santella of Division's supervisory title and demoting him without due process, thus violating the Fourteenth Amendment (the "Due Process Clause claim"); and

2. demoting Santella and terminating his supervisory duties in retaliation for his filing a grievance, thus violating the First Amendment (the "First Amendment claim").[1]

Santella seeks (among other remedies) reinstatement to a supervisory or management position within CPD or City comparable to that of Division's supervisor.

Defendants now move for dismissal under Fed.R.Civ.P. ("Rule") 12(b)(6). For the reasons stated in this memorandum opinion and order, their motion is granted in part and denied in part.

### Facts [2]

In January 1980 Santella (a CPD employee since 1977) had a conversation with CPD's Deputy Superintendent of Administrative Services James J. Zurawski ("Zurawski") in the presence of Santella's brother Rick ("Rick"), then Division's Director (¶ 5). Zurawski offered Santella the position of Division's Supervisor (*id.*). San-

---

1. As this Court has frequently had occasion to note, in Section 1983 cases (which by definition are targeted against state actors) it is imprecise to refer to violations of Bill of Rights provisions (which by definition are directed only against the federal government). Instead all such Section 1983 claims are grounded in the Fourteenth Amendment, which has been construed to incorporate Bill of Rights guaranties. Nonetheless there is not much point in swimming against the uniform tide of judicial usage—and indeed, such reference to the First Amendment (despite its technical inaccuracy) is useful in a case such

as this, which asserts Fourteenth Amendment claims founded both on its direct guaranty (the Due Process Clause itself) and a derivative guaranty (the First Amendment via the Due Process Clause).

2. Rule 12(b)(6) principles require this Court to accept as true all well-pleaded factual allegations, drawing all reasonable inferences in plaintiff's favor. *Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir.1985). All citations to the Complaint will simply take the form "¶ —."

tella accepted, based on these representations by Zurawski (¶¶ 6–7):

1. Because no supervisory titles were then available, Santella would perform Division's supervisory duties but—for payroll purposes only—would be assigned the position of Electrical Mechanic.[3]

2. Santella's supervisory title would be included in City's 1981 budget.

3. Santella would never be asked to perform the duties of Electrical Mechanic.

It was City's "common practice," when supervisory titles were unavailable, to use vacant Electrical Mechanic positions in lieu of supervisory titles for payroll purposes (¶ 6).

In May 1980 Santella became Division's Supervisor. He held that supervisory position for the next four-and-one-half years, during which time his performance was consistently rated "outstanding" (¶ 8). But Santella was never reclassified from Electrical Mechanic to Division's Supervisor during that period, even though (1) City's 1981 through 1984 budgets included that supervisory title and (2) the title had been approved by City, its Mayor and CPD's Superintendent (¶¶ 9–10).

Some time later, when Division was placed within the newly-formed Bureau of Technical Services under the responsibility of Deputy Superintendent Matt Rodriguez ("Rodriguez"), Rodriguez "continually reassured" Rick (still Division's Director) that Santella would receive the supervisory title (¶ 11). Rick passed those reassurances on to Santella, who relied on them and continued to perform Division's supervisory duties. Rick also took steps to effectuate his brother's reclassification to Supervisor (¶ 13):

1. He included the position of Division's "General Supervisor" in the 1985 budget request.

2. He "prepared an official form to facilitate [Santella's] reclassification into the title, which was approved by all levels of the [CPD] and was subsequently submitted to the Department of Personnel in due course."

In August 1984 Rick was replaced as Division's Director by Grishaber (¶ 14). Grishaber "assured [Santella] that he would continue to perform his supervisory duties" (¶ 15). Then at some point during September 1984 Grishaber learned Santella intended to file a grievance over CPD's failure to give Santella the supervisory title (¶ 16). After that (during September and October 1984) Grishaber informed Santella (¶ 17 quoted verbatim):

a. [Santella] would not be receiving the General Supervisor title, due to a purported reorganization;

b. that another employee would be assuming [Santella's] supervisory duties and responsibilities;

c. That [Santella] would be required to function as an Electrical Mechanic or else be terminated.

Grishaber then issued an order effective November 5, 1984, reassigning Santella to Division's "Operations Section" as an Electrical Mechanic (¶ 18). He could not have issued that order, Grishaber allegedly told Santella, had Santella held the supervisory title (¶ 20).

On October 18, 1984 Santella "resorted to the grievance process" to obtain the supervisory title he had been promised (¶ 21). City's Grievance Review Board ("Board") found Santella's grievance concerned a position classification and therefore was not subject to the grievance procedure (¶ 22; Ex. A). Some time later (after Santella had resorted to the grievance process) Grishaber filed an internal administrative complaint against Santella, alleg-

---

**3.** According to ¶ 19, the supervisory position is salaried with substantial benefits, whereas the Electrical Mechanic position is "an hourly or 'prevailing rate title' position with limited benefits."

ing Santella was "incompetent and unqualified" to be an Electrical Mechanic.[4]

### Defendants' Contentions[5]

Defendants move to dismiss Santella's Due Process Clause claim on the ground he had no protected property interest in any assignment, particular duties or position classification (Motion ¶ 1). Additionally defendants move to dismiss each defendant from that claim:

1. City because Santella has failed to allege any municipal custom or policy; and

2. Grishaber because there is no allegation he had actual authority to appoint Santella to a supervisory position.

Defendants move to dismiss the First Amendment claim on the ground that Santella's grievance did not involve a matter of public concern—only a matter of personal interest to Santella.

### Due Process Claim

Santella's right to procedural due process was infringed if (1) he was deprived of life, liberty or property (2) without due process (*Bigby v. City of Chicago*, 766 F.2d 1053, 1056 (7th Cir.1985), *cert. denied sub nom. Thoele v. Chicago*, — U.S. —, 106 S.Ct. 783, 88 L.Ed.2d 771 (1986)). Here Santella has alleged a without-process deprivation of property: Division's supervisory title along with the job benefits and protection of that title:

25. [City's] failure, without cause, to reclassify [Santella] to the title of Supervisor of the Division deprived [Santella] of the benefits and protections of the salaried title, and further breached the terms and conditions under which [Santella] initially agreed to perform as a Supervisor of the Division.

26. Defendants' denial of the supervisor title to [Santella] and requirement that [Santella] perform the duties of electrical Mechanic [sic] were actions taken without due cause, hearing or other process....

27. As a result of the aforementioned deprivation of the supervisory title, [Santella] has suffered substantial monetary losses, has been deprived of the benefits and protection inherent to the salaried title, and has been deprived of the opportunity to pursue his chosen career as a supervisor in the [CPD] and City government.

Both sides have only hinted at precisely what "the benefits and protections" of Division's supervisory title are. D.Mem. 4 seems to indicate that Santella, had he been given Division's supervisory title, would have become a "Career Service" employee (an undefined term). Santella Mem. 9 suggests that Santella, had he been given Division's supervisory title, could not have been demoted without a hearing showing cause:

[T]he custom of the City in temporarily slotting individuals into lesser positions without later granting them their appropriate title position has allowed an official, like defendant Grishaber, the opportunity to violate a City employee's, like [Santella's] due process right to a hearing before being demoted. The custom of the City has allowed Grishaber to demote [Santella] without cause and without affording [Santella] a hearing on whether or not sufficient cause existed to support [Santella's] demotion.

For now, however, this Court need only determine whether Santella had a protectible property interest in Division's supervisory title. Only in case of a "yes" answer (and a finding Santella was deprived of that property interest without due process) will it become necessary to identify what harm flowed from that deprivation (e.g., demotion from the job without a hearing).

To establish a property interest in Division's supervisory title, Santella must show he had a "legitimate claim of entitlement"

---

4. Santella Mem. 7 concedes Santella "was unqualified to perform as an Electrical Mechanic from day one...."

5. Although defendants moved (¶ 11) to dismiss Santella's breach-of-employment-agreement claim, neither side's memoranda have focused on that claim. Hence this opinion will not do so either.

to the title and not just an "abstract need," desire or unilateral expectation" (*Munson v. Friske*, 754 F.2d 683, 692 (7th Cir.1985), citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). Entitlements are derived from and defined by state law (*Shlay v. Montgomery*, 802 F.2d 918, 921 (7th Cir.1986)). But here Santella points to no particular state statute or regulation as the basis for his alleged entitlement to Division's supervisory title. Instead Santella Mem. 5 bases his entitlement on "mutually explicit understandings" created by (1) certain CPD officials' promises of the title and (2) Santella's actual performance of the supervisory duties.

Only the first of those factors (the promises) may potentially create an entitlement to the supervisory title. It is well-settled that mere longevity does not create a property interest in a particular position (*Shlay*, 802 F.2d at 923; *Hadley v. County of DuPage*, 715 F.2d 1238, 1244 (7th Cir.1983), *cert. denied*, 465 U.S. 1006, 104 S.Ct. 1000, 79 L.Ed.2d 232 (1984)). Nor, for the same reason, did Santella's performance of the Supervisor job create an entitlement to Division's supervisory title.

As for the claimed promises, Santella refers to three conversations:

1. Deputy Superintendent Zurawski, who gave Santella the Supervisor position, promised Santella the supervisory title when it became available.

2. Deputy Superintendent Rodriguez reassured Rick that Santella would receive Division's supervisory title, and Rick passed those assurances on to Santella.

3. Grishaber (Rick's replacement as Division's Director) assured Santella that he would continue to perform his supervisory duties.

D.Mem. 4 urges Santella had no entitlement to Division's supervisory title despite those promises, because a property interest may not arise in a manner which "contravenes express ordinance or rule provision."

To be sure, *Shlay* teaches Santella could not have had a legitimate expectation of receiving Division's supervisory title if those who promised him that title lacked authority to make the promise or violated Illinois law by making it. In *Shlay* the plaintiff challenged his termination from City's Law Department (he was an assistant corporation counsel), alleging the Corporation Counsel had promised him career employment with termination only for cause. Finding any such oral contract null and void and hence incapable of creating a property interest in career employment, our Court of Appeals said (802 F.2d at 921–23):

> Even if we accept as true Shlay's contention that the corporation counsel gave him a career contract, it is of no legal consequence. Shlay cites to no source, and we can find none, which purports to give the corporation counsel the authority to create a career position for a person in Shlay's situation. Any promise for such a position would, therefore, be unenforceable since it is well-established that a city is generally not legally responsible for acts taken by its officers in excess of their authority. *E.g., Ganley v. City of Chicago*, 18 Ill.App.3d 248, 309 N.E.2d 653, 658 (1st Dist.1974). As the *Ganley* court recognized, "anyone dealing with a governmental body takes the risk that he who purports to act for it stays within the bounds of his authority." *Id. See Chicago Patrolmen's Association v. City of Chicago*, 56 Ill.2d 503, 309 N.E.2d 3, 6, *cert. denied*, 419 U.S. 839, 95 S.Ct. 68, 42 L.Ed.2d 66 (1974). Accordingly, because the oral contract would not even be enforceable against the City, Shlay cannot contend that it created a property interest for him in continued employment.
>
> Indeed, Shlay's alleged contract giving him a career position (*i.e.*, a civil service position) would have been in contravention of Illinois law at the time he was hired.

\* \* \* \* \* \*

The result of all of this is relatively simple. There is no question that contracts which are in violation of law are

null and void. *See Comdisco, Inc. v. United States*, 756 F.2d 569, 576 (7th Cir.1985).... It is also clear that contracts which are null and void are incapable of creating property interests since such a contract cannot conceivably give rise to a legitimate expectation of continued employment.

This Court cannot determine from the Complaint (the sole reference on a Rule 12(b)(6) motion) whether Zurawski or Rodriguez had authority to promise Santella Division's supervisory title or whether they acted in contravention of some state law or City regulation. D.Mem. 4–5 refers to matter outside the pleadings, City's Personnel Rule VIII (D.Mem.Ex.A),[6] and concludes:

Pursuant to the rules and regulations of [City], only a department head can make an appointment to a Career Service position and such appointment can only be made from among qualified persons certified to the department head by the Commissioner of Personnel. Further, there is no requirement that a department head fill a position which is budgeted for his/her department. (See Personnel Rule VIII—Career Service Certifications and Appointments....)

[Santella] does not allege that the Commissioner of Personnel approved any request for the reclassification of [Santella] from the position of Electrical Mechanic to the position of Supervisor of [Division] or that the Superintendent of Police ever requested that [Santella] be appointed as such.

That cursory treatment of the issue raises more questions than it answers.[7] And without answers to those questions this Court cannot determine—at least from Personnel Rule VIII alone—whether Zurawski and Rodriguez lacked authority to promise Santella Division's supervisory title.[8] So as not to foreclose any future summary judgment motion addressing that issue, this Court denies the current dismissal motion based on the Complaint alone.[9]

---

6. D.Mem. refers only to Section 4 of that Rule:

    *Section 4—Appointment to Career Service Positions*

    The department head shall make appointments to Career Service Positions from among qualified persons certified to the department head by the Commissioner of Personnel. The department head shall make an appointment within one month after receiving the certification or return the certification and leave the position vacant.

    Even apart from the opacity of that provision (at least without added explanatory input), there is substantial doubt under the cases whether defense counsel's invitation to take judicial notice of such rules may properly be accepted under Fed.R.Evid. 201.

7. For example:

    1. What is a "department head?" Defendants appear to assume "department head" refers to the Superintendent of Police.

    2. Had Santella been given the promised title of Division's Supervisor, would that have constituted an "appointment" to a "Career Service" position?

    3. Is it City's consistent practice to require compliance with Personnel Rule VIII, or is that an internal rule (not even a regulation) that is customarily (or frequently, or even sometimes) ignored? In the same vein, is it possible or common for a Deputy Superintendent such as Zurawski to promise an employee a supervisory title and then take steps to secure that employee's certification and approval from the Commissioner of Personnel?

8. Nor does a City Municipal Code provision (cited at D.Mem. 9 in support of a different argument), which authorizes CPD's Superintendent to promote, demote or transfer CPD employees, establish that Deputy Superintendents Zurawski and Rodriguez lacked authority to promise Santella a supervisory title.

9. If this Court were to consider that Personnel Rule (a document outside the pleadings), it would be required to convert the dismissal motion into one for summary judgment under Rule 56 (see the last sentence of Rule 12(b)). But there are a host of factual questions (see, e.g., n. 7) that would then require exploration—and whether or not they ultimately proved disputed, that would likely be ascertainable only after extended discovery. Moreover, had this Court denied summary judgment, there is a serious question whether defendants would then have been foreclosed from submitting additional materials and taking a second bite at the apple in another summary judgment motion raising the same issue. See this Court's general discussion of the perils of premature or fractionalized summary judgment motions, *Teamsters Local 282 Pension Trust Fund v. Angelos*, 649 F.Supp. 1242 (N.D.Ill.1986), Appendix attached to this opinion.

**434**

■ In sum, this Court finds the Complaint may fairly be read as alleging Santella had a potential entitlement to Division's supervisory title (once it became available) for the entire period during which he performed Division's supervisory duties. Even though Santella is not now performing those supervisory duties and hence has no present entitlement to that title, he may have had such an entitlement when he was relieved of his supervisory duties. And had Santella not (allegedly) been deprived of that title without due process, perhaps he could not have been reassigned to a nonsupervisory position—at least without cause.

Having said all that, this Court must deny defendants' motion to dismiss City from the Due Process Clause claim based on Santella's failure to allege a municipal custom or policy. "Custom" is not a precondition to a municipality's Section 1983 liability, and "policy" may be made by the decision of a municipal employee with authority to act. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 1298–1300, 89 L.Ed.2d 452 (1986).[10] At this stage Zurawski and Rodriguez must be considered in that category. Of course, if it were to turn out Zurawski and Rodriguez did *not* have authority to promise Santella the title, then the Due Process Clause claim would fail, rendering moot the question of City's liability.

That, then, preserves the due process claim as such against City. However, to the extent Santella claims (see Santella Mem. 2 and 5) an entitlement to Division's supervisory *position* (as contrasted with Division's supervisory *title* for the period when he performed supervisory duties), this Court grants the motion to dismiss. Nothing in Santella's allegations supports an entitlement to Division's supervisory position itself. What Zurawski and Rodriguez allegedly promised Santella was the supervisory *title* (after all, he was actually performing Division's supervisory duties). That is *not* the same thing as promising Santella permanent or indefinite employment as Division's Supervisor. As *Shlay,* 802 F.2d 918, 923 put it:

> [S]imply because the City promised an employee increased remuneration if he was retained in his position cannot be translated into a promise that the employee would be retained.

Nor was Grishaber's alleged statement that Santella "would continue to perform his supervisory duties" a promise of indefinite employment as Division's Supervisor. As for Santella's actual performance of the supervisory duties, this opinion has already noted that mere longevity in a position does not create an entitlement to that position.

Perhaps Santella confuses entitlement to the title with entitlement to the supervisory position, on the notion that Grishaber would have been precluded from removing Santella from his supervisory position (except for cause following a hearing) if Santella had not been deprived of the title. But that merely means Santella's right to a hearing was derivative: It existed only if Santella was indeed entitled to, and deprived without due process of, Division's

---

10. It is high time the lawyers for governmental bodies realized what should have been apparent from the outset: that the talk of "policy" and "custom" in *Monell v. Department of Social Services,* 436 U.S. 658, 691–92, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978) was only a way of explaining "that a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory" (*id.* at 691, 98 S.Ct. at 2036, emphasis in original). Those "policy" and "custom" catchphrases were clearly not intended to substitute for the concept that *direct* (rather than derivative) Section 1983 liability of a corporation (including a municipal corporation) necessarily depends on the conduct of individuals. That in turn means the question becomes one of determining whether the individual or individuals acting for the municipality was or were vested with the ultimate decisionmaking authority in the area in question. This and other courts have long sought to discourage the preoccupation of public employers' lawyers with "custom" and "policy" (because that mistakes the label for the substance of the issue). Such lawyers may perhaps be excused for having failed to heed the teachings of lower courts, but now that *Pembaur* has delivered the same lesson, the repetition of the same tired arguments has become inexcusable.

supervisory title—an issue to be resolved in this action. Moreover, this Court has no means of knowing at this point whether the rights to a hearing, and to removal only for cause, were even among the job benefits to which Santella would have been accorded had he been given Division's supervisory title. That has just been asserted by the parties—not proved.

So much for City on the due process claim. As for Grishaber, this Court grants defendants' motion to dismiss him as a defendant under that claim—though not for the reasons advanced in Motion ¶ 5. Santella's Due Process Clause claim is based on his alleged entitlement to and deprivation of Division's supervisory title. Yet Santella has not alleged Grishaber either promised Santella that title or took it away. Instead Santella says Grishaber (1) was able to demote Santella because Santella had not been given the supervisory title and (2) did so in retaliation for Santella's having resorted to the grievance process. Thus Grishaber is properly a defendant only under the First Amendment claim, which this Court now examines.

### First Amendment Claim

■ Santella charges Grishaber (acting as City's agent, ¶ 30) retaliated against Santella for his "resort to the grievance process" by (¶ 29):

1. demoting Santella to the Electrical Mechanic position and terminating his supervisory duties; and

2. filing an internal administrative complaint against Santella, accusing him of being incompetent and unqualified to perform the Electrical Mechanic job.

D.Mem. 11–12 urges Santella has failed to state a First Amendment claim because Santella's grievance related not to a matter of public concern, but only to a matter of

personal interest to Santella: his alleged entitlement to a supervisory title. On that score defendants are plainly right.

*Patkus v. Sangamon-Cass Consortium,* 769 F.2d 1251, 1256–57 (7th Cir.1985), citing *Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983) (footnote omitted), has explained:

> However, personnel decisions taken in reaction to speech of only personal interest to the employee are not appropriate for review by federal courts, whether the employer is a state agency or a private enterprise. *Id.* Therefore, we must first determine if [plaintiff's] actions constituted speech of public concern or were merely actions of private and personal concern to her.

Santella Mem. 14 attempts to categorize Santella's actions as a matter of public concern by asserting the grievance was about the "unfair and ineffective employment policies of [City]." That is a total mischaracterization of Santella's grievance, which concerned *not* City's employment practices generally but rather only the particular employment decision that adversely affected Santella.[11] Even assuming that adverse employment decision was unfair or inefficient, Santella's challenge via the grievance process was not thereby transformed into a matter of public concern. See *Connick,* 461 U.S. at 146–47, 103 S.Ct. at 1689–90.

Next Santella Mem. 13 urges Santella's resort to the grievance process was protected under the First Amendment's guaranty of the right to petition the government for a redress of grievances. Although no Seventh Circuit case has squarely addressed that point, the Fifth Circuit did so in *Day v. South Park Independent School District,* 768 F.2d 696 (5th Cir. 1985), *cert. denied,* —— U.S. ——, 106 S.Ct.

---

**11.** "Findings and Decision of the Grievance Review Board" (Complaint Ex.A) says:

[Santella's] grievance concerned 1) his contention that the Department wrongfully deprived him of expressed terms and conditions of employment by failing to give him supervisory titles he had been promised when he had accepted his position and 2) his contention

that when his intention to file a grievance became known, he became the subject of harassment by being ordered either to perform the duties of his position (Electrical Mechanic) or to leave the Department.

Board concluded the grievance concerned a position classification and was therefore not subject to the grievance procedure.

883, 88 L.Ed.2d 918 (1986), a case substantially paralleling the situation now before this Court.

In *Day* a teacher filed a grievance and sought arbitration over an unfavorable evaluation. After the evaluation was found non-grievable and the request for arbitration was denied, the teacher learned her contract had not been renewed. Despite the District Court's finding that the contract would have been renewed but for the filing of the grievance (768 F.2d at 699), the Fifth Circuit held (*id.* at 701, 703):

> None of the Supreme Court cases cited by [teacher] supports the proposition that her speech on a matter of personal concern, the act of an employee addressing her employment supervisors, is protected by the petition clause because she chose to clothe her address to them in a formal grievance, in the absence of any implication of the right to freely assemble or associate.

> Other decisions that rest in part on the right-to-petition clause involve the exercise of first amendment rights in addition to the right to petition.

> \* \* \* \* \* \*

> Like the Eleventh Circuit in *Renfroe v. Kirkpatrick,* [722 F.2d 714 (11th Cir.), *cert. denied,* 469 U.S. 823 [105 S.Ct. 98, 83 L.Ed.2d 44 (1984)] we are hesitant to elevate such an employee's complaint to the level of constitutional protection merely because she has asserted it in the form of a grievance.

This Court finds the reasoning in *Day* persuasive and therefore concludes Santella's filing of the grievance would have been protected conduct under the First Amendment only if the subject matter of that grievance were a public concern. See also *Parchman v. Trustees of the University of Illinois,* No. 82 C 5010, slip op. at 7 (N.D. Ill. Sept. 30, 1983) and cases cited; cf. *Altman v. Hurst,* 734 F.2d 1240, 1244 n. 10 (7th Cir.1984) (per curiam), *cert. denied,* 469 U.S. 982, 105 S.Ct. 385, 83 L.Ed.2d 320 (1984) (construing the right-to-petition clause as covering only lawsuits "concerned about political expression," and noting "a private office dispute cannot be constitutionalized merely by filing a legal action").

For the reasons already enumerated in this opinion, this Court finds Santella's grievance concerned a matter solely of personal interest to Santella—and not of public concern. Accordingly this Court grants defendants' motion to dismiss the First Amendment claim.

### Conclusion

Defendants' motion to dismiss the Due Process Clause and breach-of-employment-agreement claims is denied, as is their motion to dismiss City as a defendant under the Due Process Clause claim. In all other respects, however, defendants' motion is granted: Grishaber is dismissed as a defendant under the Due Process Clause claim, and the First Amendment claim is dismissed in its entirety.

### Appendix

There is something quite troublesome about the use of a summary judgment motion in the present context—one that challenges a single ingredient of a cause of action, even though the absence of that ingredient is potentially dispositive. Summary judgment is intended to be a substitute for trial or, more accurately, a determination no evidentiary trial is necessary because material factual disputes are absent. *American Floral Services, Inc. v. Florists' Transworld Delivery Association,* 633 F.Supp. 201, 225 (N.D.Ill.1986). If a party goes to trial and loses, there is no opportunity for a second trial to advance evidence or issues that could have been but were not put forth at trial. *Factofrance Heller v. I.P.M. Precision Machinery Co.,* 627 F.Supp. 1412, 1416 (N.D.Ill.1986). And so it has become well established that the *opponent* of a Rule 56 motion cannot "hold back" evidence—if the motion is lost, there is no second chance. *Publishers Resource, Inc. v. Walker Davis Publications,* 762 F.2d 557, 561 (7th Cir.1985), quoting this Court's opinion in *Keene Corp. v. Interna-*

*tional Fidelity Insurance Co.,* 561 F.Supp. 656, 665–66 (N.D.Ill.1982), *aff'd and adopted,* 736 F.2d 388, 393 (7th Cir.1984).

But the risk to a Rule 56 *movant* who, holds back (in the sense of addressing fewer than all the factual issues) and is unsuccessful is not well defined. See *Green v. Silver Cross Hospital,* 606 F.Supp. 87, 88–89 (N.D.Ill.1984). Because the issue now put to this Court does dispose of plaintiff's claim once defendants succeed on it, this is not an instance of a party's impermissible attempted use of Rule 56 as issue-narrowing rather than claim-dispositive. *Arado v. General Fire Extinguisher Corp.,* 626 F.Supp. 506, 508–09 (N.D.Ill.1985) and cases cited, particularly this Court's opinion in *SFM Corp. v. Sundstrand Corp.,* 102 F.R.D. 555, 558–59 (N.D.Ill.1984) and Judge Getzendanner's in *Capitol Records, Inc. v. Progress Record Distributing, Inc.,* 106 F.R.D. 25 (N.D.Ill.1985). And because it turns out defendants *do* win, this Court need not decide whether they had staked everything on a single throw had they lost (the issue this Court identified but did not have to resolve in *Green*). Nor is it necessary now to decide whether that issue is affected by defendants' simultaneous tender of pleading motions under Rules 9(b) and 12(b)(6). All the same, if the Court of Appeals were to disagree with this opinion's application of issue-preclusion doctrine, the all-or-nothing question identified in *Green* may have to be decided by that court or this one (or perhaps by one of this Court's colleagues).