Ronald SANTELLA, Plaintiff,

v.

Richard GRISHABER and City of
Chicago, Defendants.

No. 86 C 6223.

United States District Court,
N.D. Illinois, E.D.

Oct. 15, 1987.

John L. Gubbins, John L. Gubbins & Assoc. Ltd., Chicago, Ill., for plaintiff.

Mary L. Smith, Asst. Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Ronald Santella ("Santella") has sued Richard Grishaber ("Grishaber") and the City of Chicago ("City") under 42 U.S.C. § 1983 ("Section 1983") for alleged deprivations of his due process rights in relation to his employment with City. On February 17, 1987 this Court (in the "Opinion," 654

F.Supp. 428) dismissed Santella's entire claim grounded in the First Amendment[1] (*id.* at 435–36) and his due process claim against Grishaber (*id.* at 435), while sustaining Santella's due process claim against City (*id.* at 434–35).

Santella then filed his First Amended Complaint (the "Complaint"), in which he:

1. again included Grishaber as a defendant to the Section 1983 claim;

2. added a state law claim against City and Grishaber for breach of contract; and

3. added a state law claim against Grishaber for tortious interference with his contract with City.[2]

City and Grishaber have now moved under Fed.R.Civ.P. ("Rule") 12(b)(6) to dismiss the pendent state law claims, and Grishaber seeks dismissal from the Section 1983 claim. For the reasons discussed below, Grishaber's motion is granted in full, while City's is granted in part and denied in part.

### Facts[3]

In January 1980 James Zurawski ("Zurawski"), then Deputy Superintendent of the Bureau of Administrative Services of City's Police Department ("Department"), offered Santella the position of Supervisor of Motor Maintenance in Department's recently-created Motor Maintenance Division (¶¶ 12, 7). There was a hitch: Because City had not budgeted for the position, Santella would have to carry the title of "electrical mechanic" until 1981, when the new budget would come into effect (¶¶ 9, 10, 12).

Santella was reluctant to leave his position with Department's Office of Professional Standards, but based on Zurawski's

---

1. As this Court has frequently noted, Section 1983 claims against state actors necessarily rest on asserted Fourteenth Amendment violations. Nevertheless custom, convenience and clarity of reference all suggest the usage (however imprecise in the technical sense) of identifying the underlying Bill of Rights provision rather than the Fourteenth Amendment (which incorporates it). This Court has followed that usage.

2. Complaint Count II also added a 42 U.S.C. § 1985 claim against Grishaber and City for allegedly conspiring to deprive Santella of his constitutional rights. Santella Mem. 18 has now withdrawn Count II.

3. Rule 12(b)(6) principles require this Court to accept as true all of Santella's well-pleaded factual allegations, drawing all reasonable inferences in his favor. *Marmon Group, Inc. v. Rexnord, Inc.*, 822 F.2d 31, 34 (7th Cir.1987) (per curiam). Citations to the Complaint will take the form "¶ —" (referring to the first 33 paragraphs, which are common to all four counts) or "Count—¶ —" (referring to paragraphs that appear only in individual counts). This factual statement omits allegations directed particularly toward establishing Santella's Section 1983 claim against City.

reassurances that he would get the Supervisor title in 1981, he accepted the job (¶¶ 11, 12, 14). That meant he assumed the duties and responsibilities of the Supervisor position—but without the title.

In April 1980 a Department reorganization placed Santella's Division under Deputy Superintendent Matt Rodriguez ("Rodriguez") rather than Zurawski (¶ 17). Rodriguez knew Santella had been promised the Supervisor title and continually reassured Santella—through Santella's brother Rick, the Director of the Motor Maintenance Division—that he would get the title (*id.*). Yet even though City did create the Supervisor title in its 1981 budget, Santella was not reclassified into that title in 1981 (¶ 19). In fact, despite the repeated budgeting of the position for 1982, 1983 and 1984, Santella was never assigned the title (*id.*). In 1984 Santella's brother Rick eliminated the Supervisor title from Department's 1985 budget (¶ 20). At the same time he included a new position denominated "General Supervisor" in the budget and submitted the paperwork necessary to assign Santella to that position (*id.*).

In August 1984 Grishaber replaced Rick Santella as Director (¶ 21). Grishaber assured Santella he could continue to perform his supervisory duties (¶ 22). However, during September 1984 Grishaber learned that Santella intended to file a grievance over his failure to get the title (¶ 23) and retaliated by (1) telling Santella he would not receive the General Supervisor title and (2) ordering him to begin working as an electrical mechanic (¶¶ 24, 25, 29). Santella did file his grievance, but City's Grievance Review Board found his case to be outside the grievance provisions (¶¶ 27, 28).

### Count I's Claim Against Grishaber

Santella's original complaint alleged that Grishaber had promised Santella he would be allowed to continue to perform his supervisory duties. Significantly, it did not say Grishaber either promised Santella the title of Supervisor of Motor Maintenance or took that title from him. For that reason Opinion, 654 F.Supp. at 435 dismissed Grishaber as a defendant to the due process claim.

That deficiency is not remedied by the Complaint, which alleges only that Grishaber assured Santella he could continue to perform his supervisory duties (¶ 21). Again there is no allegation that Grishaber either promised Santella the Supervisor title [4] or took the title away.[5] Because the Complaint comes no closer to stating a Section 1983 claim against Grishaber than the original complaint, despite the Opinion's clearly stated reasons for the earlier dismissal, no purpose would be served by allowing Santella an opportunity to replead. Count I is dismissed with prejudice as to Grishaber.

### Count IV's Claim Against Grishaber
#### 1. Jurisdiction

Grishaber is the sole defendant to Count IV's pendent claim of tortious interference with contractual relations. While neither party has addressed the obvious jurisdictional question, this opinion must do so before addressing the merits of the claim (see *Wisconsin Knife Works v. National Metal Crafters*, 781 F.2d 1280, 1282 (7th Cir.1986)).

With Grishaber dismissed from Count I, Count IV must survive—if at all—under the doctrine of pendent party jurisdiction. While that concept stands on "wobbly constitutional foundations" (*Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1359 (7th Cir.1985) (Posner, J., concurring and dissenting in part)), and while authority in other Circuits rejects the doctrine

---

**4.** Indeed, the Complaint suggests that when Grishaber became Director in August 1984 the title had already been abolished in the budget for 1985 (a budget prepared by Grishaber's predecessor, Santella's brother).

**5.** There is little difference between the Complaint and the original complaint as to Grishaber. Complaint ¶¶ 21–25 mirror the original complaint's ¶¶ 14–20 almost word for word. All that has been added is Complaint ¶ 26, where Santella alleges Grishaber told him that, had he already been given the Supervisor title, he would not have been assigned the Electrical Mechanic duties. That statement—assumed true for present purposes—is irrelevant to Grishaber's Section 1983 liability.

entirely (see, e.g., *Carpenters Southern California Administrative Corp. v. D. & L. Camp Construction Co.*, 738 F.2d 999, 1000 (9th Cir.1984)), our Court of Appeals has approved the exercise of pendent party jurisdiction under certain conditions (see, e.g., *Moore*, 754 F.2d at 1359 (Posner, J., concurring and dissenting in part); *id.* at 1361 (Gibson, J., concurring and dissenting in part)). *Zabkowicz v. West Bend Co.*, 789 F.2d 540, 546 (7th Cir.1986) (citations omitted) has summarized those conditions in these terms:

> In order to establish pendent party jurisdiction a two-prong test must be satisfied. First, the requirements of Article III of the Constitution for the exercise of federal judicial power must be fulfilled. Second, relevant statutory limitations on the exercise of pendent jurisdiction must be examined.... The constitutional prong of the test is satisfied when (1) there is a federal claim which is of sufficient substance to confer federal jurisdiction and (2) the federal and state claims are derived "from a common nucleus of operative fact" such that a plaintiff "would ordinarily be expected to try them all in one judicial proceeding...."
> ... The second prong of the test requires "an examination of the posture in which the nonfederal claim is asserted and of the specific statute that confers jurisdiction over the federal claim, in order to determine whether 'Congress in [that statute] has ... expressly or by implication negated' the exercise of jurisdiction over the particular nonfederal claim."

Even if that dual test is satisfied, a district court may still decline to exercise pendent party jurisdiction if it is not justified by "considerations of judicial economy, convenience and fairness to litigants" (*id.*, quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966)).

Santella plainly meets the first element of the constitutional prong of the *Zabkowicz* test: His surviving Count I Section 1983 claim (that against City) is a substantial federal claim. It is equally clear that Santella's claim for tortious interference with his employment contract shares a "common nucleus of operative fact" with his Section 1983 claim. To establish the latter Santella will have to prove entitlement to the supervisory title he claims he was denied (Opinion, 654 F.Supp. at 434). That entitlement will rest on state law (*id.* at 432). By comparison, Santella's state claim for tortious interference with his employment contract will require proof that a valid contract existed (*George A. Fuller Co. v. Chicago College of Osteopathic Medicine*, 719 F.2d 1326, 1330 (7th Cir. 1983)). Proof of "entitlement" is likely to be similar if not identical to proof of "contract." While there may be less congruence between the other elements of the causes of action,[6] still the evidence is likely to be substantially duplicative.

As for the second (non-constitutional) prong of the *Zabkowicz* test, Santella must first address the suggestion in *Aldinger v. Howard*, 427 U.S. 1, 14–16, 96 S.Ct. 2413, 2420–21, 49 L.Ed.2d 276 (1976) that pendent party jurisdiction is never available in Section 1983 cases.[7] However, *Aldinger's* actual holding was less expansive: It merely rejected pendent party jurisdiction over a state law claim against a municipality, reasoning that Congress had excluded municipalities from Section 1983 liability[8] in part because it did not wish to

---

**6.** For example, the Section 1983 claim will require proof that Santella was deprived of the supervisory title without due process (Opinion, 654 F.Supp. at 431)—no bad intent need be shown. Conversely, the state tort claim will require proof of "an intentional and malicious inducement of the breach" (*George A. Fuller*, 719 F.2d at 1330).

**7.** *Aldinger* held a Section 1983 claim with jurisdiction based solely on 28 U.S.C. § 1343 ("Section 1343") could not support a pendent state law claim against a municipality. It did not

decide (427 U.S. at 4 n. 3) the viability of a pendent claim annexed to a federal-question claim, where jurisdiction rests on 28 U.S.C. § 1331 ("Section 1331"). Santella has grounded jurisdiction in both Sections 1343 and 1331 (¶ 1).

**8.** *Aldinger* antedated *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), which (overruling *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)) subjected municipalities to Section 1983 liability. *Monell's* shift in Section

subject municipalities to federal court jurisdiction in such cases (*id.* at 17, 96 S.Ct. at 21). Our own Court of Appeals (in *Moore,* 754 F.2d at 1359, 1361[9]) has found that concern inapplicable when (as here) the pendent party is a private individual of the kind Congress certainly intended to subject to federal jurisdiction through Section 1983 and its jurisdictional counterpart, Section 1343. This Court perforce follows *Moore*'s lead.[10]

■ That gets Santella to the pendent jurisdiction door—but not necessarily inside. As *United Mine Workers,* 383 U.S. at 726, 86 S.Ct. at 1139 teaches, the decision whether judicial discretion calls for the exercise of jurisdiction—of power—depends on "judicial economy, convenience and fairness to litigants." Certainly those factors favor trying these evidence-related Section 1983 and state law claims in a single forum. True enough, that could be done in a state court too (given the concurrent jurisdiction conferred by Section 1983). But as Judge Posner has stressed (*Moore,* 754 F.2d at 1361 (concurring and dissenting in part)), "many civil rights plaintiffs anticipate a friendlier reception from the federal court" and "[a]ccess to a federal forum was intended to be a right of section 1983 plaintiffs." All in all, the relevant considerations weigh heavily in favor of exercising pendent party jurisdiction, and this Court will do so.

## 2. *Illinois Law*

It is time, then, to turn to the merits of Count IV. Grishaber urges its dismissal for three independent reasons, any one of which would suffice:

1. It is said to be time barred by the Illinois statute of limitations for torts by government employees.

2. It is also asserted to be barred by Santella's failure to serve notice under Ill.Rev.Stat. ch. 85, ¶ 8–102 ("Section 8–102").[11]

3. It allegedly fails to state a claim for tortious interference with contract under Illinois law.

As for the first of those contentions, Ill.Rev.Stat. ch. 85, ¶ 8–101 ("Section 8–101") now requires tort actions against governmental employees to be brought "within one year from the date that the injury was received or the cause of action accrued." Because Grishaber's alleged interference with Santella's employment contract occurred from August through November 1984 and Santella did not file suit until August 1986,[12] Grishaber says the claim is out of time. Santella retorts the current version of Section 8–101 does not apply because it did not become effective until November 26, 1986, *after* this action was filed.

■ Santella is right.[13] When Santella's cause of action arose, Section 8–101 provid-

---

1983 doctrine has not affected pendent party doctrine (*Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 372–73, 98 S.Ct. 2396, 2401–02, 57 L.Ed.2d 274 n. 12 (1978)).

**9.** Judge Posner's statement to that effect (the first-cited reference) was joined by Judge Gibson (the second).

**10.** If anything, this is a stronger case than *Moore* for pendent party jurisdiction. There the pendent claim was against a private party who was not acting under color of state law and was thus outside the scope of Section 1983 (754 F.2d at 1352 (Coffey, J., concurring and dissenting in part)). Here Grishaber is a state actor who would be swept up by Section 1983 had his conduct violated constitutional rights.

**11.** Even though the Smith–Hurd Revised Statutes now use the "¶" rather than "§" notation, the Illinois General Assembly continues to employ "§" in its enactments. This opinion there-

fore uses the "Section—" designation in referring to all Illinois statutes.

**12.** Santella did not bring his state law tort claim against Grishaber until March 20, 1987. However, that new count "arose out of the conduct, transaction or occurrence" (the language of Rule 15(c)) that had been complained of in the original complaint, and Grishaber was a named defendant from the outset. Under Rule 15(c) the new Count IV therefore relates back to the original action's August 1986 filing date.

**13.** Defendants maintain the current Section 8–101 one-year statute of limitations does apply to causes of action that accrued before its enactment. They base their contention on what their counsel terms a "careful reading" of Article 27 of the enacting legislation, P.A. 84–1431, which said "Articles 1 and 3 through 6 apply only to causes of action accruing on or after" November 25, 1986 (Def. R. Mem. 8–9). Because Sec-

ed a two-year statute of limitations. More important for a correct disposition of the claim against Grishaber, that provision then applied only to actions against governmental entities, not against their employees. It thus becomes necessary to look to other sources of Illinois law for the appropriate statute of limitations.

In that respect, Grishaber's other limitations line of defense is that Santella's claim is barred by Illinois' two-year statute of limitations for personal injury claims (Ill. Rev.Stat. ch. 110, ¶ 13–202 ("Section 13–202")). Santella responds that the five-year limitations period for actions on unwritten contracts applies (Ill.Rev.Stat. ch. 110, ¶ 13–205 ("Section 13–205")). Both those arguments are wrong as made. As for Grishaber's, it clearly misstates the scope given the "injury to the person" concept for limitations purposes by Illinois courts (see the discussion in this Court's opinion in *Shorters v. City of Chicago*, 617 F.Supp. 661, 664–65 (N.D.Ill.1985)). As for Santella's argument, it is scarcely surprising that his counsel offers no authority for the bizarre suggestion that a *tort* claim for interference with a contract is governed by the statute of limitations for action on a *contract.* That position is really self-destructive.

■ Instead, Santella turns out to have picked the right statute for the wrong rea-

son: Section 13–205's five-year period applies because of the statutory catchall language—because this is a "civil action not otherwise provided for" (*Johnson v. Lincoln Christian College,* 150 Ill.App.3d 733, 740, 103 Ill.Dec. 842, 852, 501 N.E.2d 1380, 1390 (4th Dist.1986), *leave to appeal denied,* 114 Ill.2d 546, 508 N.E.2d 729, 508 N.E.2d 729 (1987)).[14] Because all the allegations against Grishaber involve acts well within five years of the commencement of this action, it is not time-barred.

■ Grishaber's lack of success on limitations grounds forces a look at his next contention—that Santella's claim is foreclosed because he did not comply with the notice requirements of Tort Immunity Act Section 8–102, as formerly found at Ill.Rev. Stat. ch. 85, ¶ 8–102. That argument gets short shrift, because the notice requirement—when it did exist—applied only to suits against governmental entities. Indeed, the same 1986 amendment that extended the Tort Immunity Act to governmental employees repealed the notice requirement (P.A. 84–1431 Art. I, §§ 2 and 3)![15]

Finally Grishaber contends the Complaint fails to state a cause of action for interference with contractual relations. Under Illinois law the elements of that tort are (*R.E. Davis Chemical Corp. v. Diason-*

tion 8–101 is in Article 8 of the Local Governmental and Governmental Employees Tort Immunity Act, Ill.Rev.Stat. ch. 85, ¶¶ 1–101 through 10–101, (the "Tort Immunity Act"), defendants' counsel concludes the shorter limitations period applies retroactively. But counsel is not a "careful reader." It does not require strict scrutiny to decipher the fact that Article 27 refers to the Article numbering in P.A. 84–1431 itself and *not* to the Article numbering in the Tort Immunity Act. Section 8–101 was amended by Art. 1, § 2 of P.A. 84–1431, so the quoted language from Article 27 means the new and shorter limitations period does *not* apply.

**14.** This conclusion conflicts with the result (though not with any analysis) in *Feng v. Sandrik,* 636 F.Supp. 77, 84 (N.D.Ill.1987), where Judge Aspen did apply the two-year limitations period to the tort of interference with contractual relations. In *Feng* the parties apparently assumed Section 13–202 applied unless the cause had been fraudulently concealed, and the court directed its attention to that issue (*id.* at 84 n. 8).

*Feng* did not focus on whether Section 13–202 or Section 13–205 applied, and it cited no authority for its use of the shorter limitations period. Of course, where Illinois law provides the rule of decision, it is what Illinois courts say the law is, and not what federal courts (however well respected) say on that score, that must control.

**15.** It is a close question whether, on this point, Grishaber's counsel should get the 1987 Audacity Medal (with oak-leaf clusters) or a Rule 11 sanction or both. Without missing a beat, counsel shifts from arguing (1) that the post–1986– amendment version of the Tort Immunity Act applies for statute of limitations purposes to arguing (2) that the pre–1986–amendment version applies for purposes of the notice requirement. What it really comes down to is that responsible counsel should never have made a lack-of-notice argument at all, for on *that* issue Grishaber has to lose whichever version of the statute (pre-amendment or post-amendment) governs.

*ics, Inc.,* 826 F.2d 678, 685 (7th Cir.1987), quoting *Swager v. Couri,* 60 Ill.App.3d 192, 196, 17 Ill.Dec. 475, 478, 376 N.E.2d 456, 459 (3d Dist.1978), *aff'd,* 77 Ill.2d 173, 32 Ill.Dec. 540, 395 N.E.2d 921 (1979)):

> a valid contract, defendant's knowledge of the existence of the contract, defendant's intentional and malicious inducement of the breach of the contract, breach of the contract caused by defendant's wrongful conduct and resultant damage to the plaintiff.

Grishaber says the Complaint is deficient because (1) as a matter of law there was no valid contract and (2) a corporate officer cannot tortiously interfere with his own corporation's contract.

Santella's Complaint is not entirely clear about the nature of the assertedly-breached contract. Count IV ¶ 37 simply refers to Santella's "employment contract" with City (Count IV ¶ 38 uses the term "employment agreement"). But the Opinion has already held Santella had no protectable property interest in—and by necessity no contract right to—either the supervisory duties or his continued employment with City. Santella's claim is rather that City breached a contract to give him the supervisory title (Count I ¶ 31, incorporated by reference into Count IV)—and Count IV ¶¶ 37 and 38 charge Grishaber's tortious interference with that contract.

Grishaber spends much effort urging there is no valid contract, so there could be no breach. But as Opinion, 654 F.Supp. at 432–34 has already held as to Santella's Section 1983 claim, whether the commitments to Santella provided him with a property interest—or contract right—in the supervisory title cannot be resolved against him solely by reference to his Complaint. It is necessary for present purposes to assume the existence of a contract to give Santella the supervisory title.

Even so, the Complaint cannot fairly be read to charge that Grishaber induced City to breach that contract. Santella had been promised he would get the title of Supervisor of Motor Maintenance in 1981 if he began working under the Electrical Mechanic title in 1980 (¶ 5). City breached that contract in 1981 when it failed to provide Santella with the title (¶¶ 19, 31). Other allegations (¶¶ 17, 19) at least arguably suggest Santella (1) received repeated assurances from 1981 to 1984 that he would get the title and (2) continued to work in reliance on the reassurances. If so, City either continued to breach its original contract by failing to give Santella the title, or it created and then breached a series of like contracts.

In 1984 (before Grishaber arrived on the scene) Santella's brother Rick, then Director of Motor Maintenance, proposed both to abolish the title Santella had been promised and to create a new position of General Supervisor (¶ 20). Rick also submitted paperwork "to facilitate [Santella's] reclassification into the [*new*] title ..." (*id.*). There is however no allegation either (1) that Rick Santella (or any other City official) promised Santella the newly-created title or (2) that Santella continued to work in reliance on any such promise.

■ That then was the asserted factual framework when Grishaber replaced Rick Santella as Santella's superior in August 1984 and is purported to have induced City to breach its promise to give Santella the title of Supervisor. City had breached that promise long before Grishaber came on the scene, and it had even begun to eliminate the title to which Santella lays claim. On the Complaint's allegations Grishaber may have induced City to withhold the new General Supervisor title from Santella, but the Complaint does not establish Santella had a contract right to *that* title. Thus Count IV fails for two related reasons:

> 1. If Santella had a contract right to the Supervisor title, Grishaber cannot be said to have induced the breach.
> 2. Even if Grishaber induced City to deprive Santella of the new General Supervisor title, Santella has not alleged a contract right to that title.

■ That latter defect might perhaps be cured by artful repleading. But Grishaber provides another—and seemingly non-curable—flaw in Santella's tortious-interference-with-contract claim. Under Illinois law, an employee of City such as Grishaber

is liable for tortious interference with its contracts only if he induced the breach to further his personal goals or harm Santella *and* acted contrary to City's best interests (*George A. Fuller Co.*, 719 F.2d at 1333 and Illinois cases cited there). While conceding that general rule, Santella maintains the rule should not apply to employees of governmental entities. He cites no authority at all for that position, advancing a policy argument instead.

Both our Court of Appeals and this Court are too frequently forced to repeat that it is not the federal courts' role in diversity cases (or, as here, on pendent state law claims) to launch daring advances in state law (*Gust K. Newberg Construction Co. v. E.H. Crump & Co.*, 818 F.2d 1363, 1368 (7th Cir.1987)). That principle applies particularly when (as here) the federal court would be required to create a new exception to a well-established state law rule.[16]

■ Accordingly, Santella must allege Grishaber "induced the breach to further [his] personal goals or to injure the other party to the contract, *and* acted contrary to the best interests of [City]" (*George A. Fuller*, 719 F.2d at 1333 (emphasis in original)). Santella maintains the Complaint does that: Count IV ¶ 38 characterizes Grishaber's interference as "intentional and malicious," and ¶ 29 alleges he "demoted" Santella and forced him to perform electrical mechanic work in retaliation for Santella's resort to the grievance procedure. Those allegations might be enough at the pleading stage *if* changing Santella's job duties were the asserted breach of his contract. However, the contract Santella claims is a different one—to provide him the Supervisor title. Plainly the Complaint does not allege Grishaber denied Santella the title in retaliation for filing the grievance. It says just the opposite: that Santella filed the grievance in response to be-

ing denied the title. Hence Count IV must also be dismissed for failing to allege the particular degree of malice needed when the alleged tortfeasor is the employee of the party breaching the contract.

### Count III's Claim Against Grishaber

As for Count III's claim of Grishaber's breach of the contract between Santella and City, it would be appropriate for this Court to accept pendent party jurisdiction for the reasons already explained. Also for the reasons discussed above, the Tort Immunity Act statute of limitations does not apply. Again the Section 13–205 five-year statute governs—this time because an oral contract is at issue. There is therefore no possible limitations problem.

While defendants have moved to dismiss Count III in its entirety, their arguments have focused solely on whether Santella has stated a claim against City. Def. Mem. 6–10 and Def. R. Mem. 3–8 never really acknowledge Grishaber is also named as a defendant to the count. On his part, Santella has merely named Grishaber as a defendant, and *his* memorandum never articulates any legal theory under which Grishaber can be liable for breach of contract.

■ There is none. Grishaber was not a party to the contract between Santella and City. Non-parties are not liable for breach of contract (*Meeker v. Gray*, 142 Ill.App.3d 717, 727–28, 97 Ill.Dec. 72, 79, 492 N.E.2d 508, 515 (5th Dist. 1986)). Count III's claim against Grishaber is dismissed.

### Count III's Claim Against City

City has moved to dismiss the Count III breach of contract claim (1) as barred by limitations and (2) as failing to state a claim under Illinois law.[17] Those arguments will be dealt with in turn.

---

**16.** Santella's policy argument is also based on a misperception of the meaning Illinois ascribes to element of "malicious" interference in its tort cause of action. Santella seems to believe that element is the equivalent of acting to further personal goals (Santella Mem. 14) rather than merely "intentionally and without just cause" (*Amalgamated Financial Corp. v. Atlantis, Inc.*,

105 Ill.App.3d 379, 381, 61 Ill.Dec. 264, 266, 434 N.E.2d 417, 419 (1st Dist.1982)).

**17.** Because City is already the defendant in the Count I Section 1983 claim, pendent claim rather than pendent party jurisdiction is involved as to Count III. No serious doubt can exist on that score.

City first urges the breach of contract claim is foreclosed by the Tort Immunity Act (Section 8–101). If that statute does apply, its pre-November 1986 two-year provision is the relevant one (for the reasons already discussed). Santella, on the other hand, argues the Section 13–205 five-year limitations period for contract actions applies because the pre-amendment Tort Immunity Act covered only tort actions for personal injuries. Santella appears to have much the better of that argument.[18]

But it is unnecessary to resolve that issue now. As this opinion has already suggested, it is reasonable to read the Complaint as alleging breaches of contractual commitments to Santella within the shorter limitations period. Deputy Superintendent Rodriguez "continually reassured" Rick Santella that Santella would receive the title, and those reassurances were passed on to Santella (¶ 17). With the required favorable inferences, those reassurances (and the consequent breaches) may be viewed as having continued into August 1984—and it must be recalled Santella's resulting damage (a necessary component to ripen a cause of action) may be considered to have occurred then. Hence even the shorter limitations period would not bar the claim.[19]

City's primary contention is that there was no valid contract and therefore no breach. Once more, the alleged contract is *not* one to continue to employ Santella as a supervisor. Instead Santella alleges a contract to provide him the title of Supervisor in return for his temporary service under the Electrical Mechanic title.[20]

As Opinion, 654 F.Supp. at 433 makes clear, a motion to dismiss—as opposed to one for summary judgment—is usually not the appropriate vehicle when the issue is the authority of an official to enter into a contract. This Court cannot learn from the Complaint whether Zurawski, Rodriguez or Rick Santella had authority to enter into contracts of the sort alleged here on City's behalf.[21] Only if those individuals lacked authority as a matter of law is dismissal appropriate.

■ City points to Illinois Municipal Code ¶ 8–1–7 (Ill.Rev.Stat. ch. 24, ¶ 8–1–7), which declares null and void any contract unless supported by a prior appropriation. City says Santella's failure to allege the existence of a prior appropriation renders Count III deficient. However, City has the burden of proving there was no prior appropriation (*D.C. Consulting Engineers, Inc. v. Batavia Park District*, 143 Ill. App.3d 60, 64, 97 Ill.Dec. 341, 344, 492 N.E.2d 1000, 1003 (2d Dist.1986)). Because that places the issue in the affirmative-defense category, Count III survives in its present form.

■ Nevertheless, the Complaint itself does demonstrate the illegality of any contract entered into in 1980. It specifically alleges the 1981 budget, which would create and appropriate funds for the Supervisor position, had not been passed when Zurawski promised Santella the Supervisor title (¶ 12). Those commitments are thus unenforceable against City. It makes no difference that City's 1981 budget ordi-

---

**18.** Section 8–101 has always applied to any "civil action ... for any injury...." In the statute's pre–November–1986 version, "injury" was defined this way (Ill.Rev.Stat. ch. 85, ¶ 1–204):

"Injury" means death, injury to a person, or damage to or loss of property. It includes any other injury that a person may suffer to his person, reputation, character or estate which does not result from circumstances in which a privilege is otherwise conferred by law and which is of such a nature that is would be actionable if inflicted by a private person.

To read that as encompassing contract breaches would seem a real distortion of normal usage.

**19.** Of course it may ultimately be necessary to determine which statute of limitations applies,

in order to decide which of the oral commitments are or are not time-barred.

**20.** To be sure, Santella doesn't just want the title. He wants to stay in the job. But the procedural protections that would help him do so must derive from Santella's first being placed in the position.

**21.** Def. R. Mem. 4 argues the Complaint does not even allege Zurawski had authority to promise Santella the title (as contrasted with ¶ 12's saying Zurawski told Santella he had such authority). That contention ignores Santella's right to favorable inferences (and see ¶ 9).

nance later did appropriate funds for the Supervisor position and that the promise was not to take effect until then (see *Ligenza v. Village of Round Lake Beach*, 133 Ill.App.3d 286, 292, 88 Ill.Dec. 579, 583, 478 N.E.2d 1187, 1191 (2d Dist.1985)). Although Santella therefore cannot base a contract claim on the promises made before the passage of the 1981 appropriation ordinance, Count III cannot be dismissed to the extent the later promises may have created contract rights.[22]

### Conclusion

Grishaber prevails in every respect, and he is dismissed as a defendant. As for City:

1. Count III is dismissed to the extent it is based on an alleged contract entered into before passage of City's 1981 appropriations.

2. Count III survives to the extent it is based on alleged contractual commitments made while appropriations for the Supervisor position were in place.

3. Count II is dismissed with Santella's consent.

This opinion has drawn substantial inferences in Santella's favor to save Count III. It may be that Santella did not really intend to say he received repeated commitments to confer the Supervisor title on him during 1981 through 1984—and he might not be able to allege later commitments in good conscience (see Rule 11). Santella is therefore directed to file, on or before October 28, 1987, a Second Amended Complaint clarifying what commitments he is alleging were made within the relevant period. If he fails to do so, Count III will be dismissed in its entirety.

---

**22.** City also urges none of those who promised Santella the Supervisor title had authority to do so. That question cannot be evaluated without referring to factual matters outside the Complaint, impermissible on the current Rule 12(b)(6) motion.