Howard SHLAY, Plaintiff-Appellant,

v.

James MONTGOMERY, Harold Washington & City of Chicago, A Municipal Corporation, Defendants-Appellees.

No. 85–2943.

United States Court of Appeals, Seventh Circuit.

Argued June 10, 1986.

Decided Sept. 30, 1986.

Kenneth K. Ditkowsky, Ditkowsky & Contorer, Chicago, Ill., for plaintiff-appellant.

Jennifer A. Keller, Corp. Counsel, Chicago, Ill., for defendants-appellees.

Before WOOD, CUDAHY, and FLAUM, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Plaintiff-appellant Howard Shlay appeals the district court's grant of summary judgment in favor of defendants-appellees James Montgomery, Harold Washington and the City of Chicago (collectively the "defendants"). Shlay brought this action alleging that his termination as an assistant corporation counsel for Chicago (1) deprived him of his property interest in continued employment without due process, (2) deprived him of his liberty interest in his professional reputation without due process, (3) violated his right to equal protection and due process since he was the victim of selective and arbitrary enforcement of the City's residency requirement, and (4) constituted a politically motivated firing in contravention of the *Shakman* decree.[1] Shlay also alleges various violations of state law. The district court granted summary judgment to the defendants with respect to Shlay's federal counts and dismissed without prejudice the pendent state claims for lack of jurisdiction. We affirm.

I.

Shlay was hired by the City of Chicago to serve as an assistant corporation counsel in the City's Law Department in 1970. At the time of his hiring, Shlay was a resident of Flossmoor, Illinois, and informed his employer that he did not live within the confines of Chicago. Although when he was terminated Shlay did own a home in the City for convenience, his principal residence remained in Flossmoor during the sixteen years he served as an assistant corporation counsel.

On April 30, 1985, without a hearing, Shlay was terminated allegedly because he was found to be in violation of Chicago's residency requirement. As a condition of employment Chicago mandates that City employees, irrespective of status, be actual residents of the City. Pursuant to City policy, the residency requirement is manda-

---

1. *See Shakman v. Democratic Organization of Cook County,* 481 F.Supp. 1315 (N.D.Ill.1979) (appendix).

tory and by failing to comply an employee is subject to being discharged.

During the course of his employment Shlay executed several documents which required him to list his residence and which articulated the City's policy with respect to its residency requirement. In April 1985, an investigation revealed that Shlay was not complying with the requirement and he was subsequently terminated.

Prior to the effective date of his discharge, Shlay brought the present action asserting violations of the fourteenth amendment and the *Shakman* decree. Shlay thereafter amended his complaint to add state claims alleging breach of employment contract, unjust enrichment, retaliatory discharge, and violations of both the Illinois Constitution of 1970 and the Illinois Personal Records Act, Ill.Ann.Stat. ch. 48, ¶ 2001 *et seq.* (Smith-Hurd 1986 Supp.).

The district court subsequently granted summary judgment in favor of the defendants with respect to the federal claims and dismissed the state claims without prejudice. Shlay appeals from the decision of the district court.

## II.

Fed.R.Civ.P. 56(c) provides that the district court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In determining whether the district court appropriately granted summary judgment, "[a]ll factual inferences are to be taken against the moving party and in favor of the opposing party." *International Administrators, Inc. v. Life Insurance Co. of North America*, 753 F.2d 1373, 1378 (7th Cir.1985). In instances in which "inferences contrary to those drawn by the trial court might be permissible," the district court's grant of summary judgment must be reversed. *Munson v. Friske*, 754 F.2d 683, 690 (7th Cir.1985). Once a motion for summary judgment has been made and

properly supported, however, the nonmovant does have the burden of setting forth specific facts showing the existence of a genuine issue of fact for trial. *See* Rule 56(e); *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.) (noting that "a bare contention that an issue of fact exists is insufficient to raise a factual issue"), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). Although a requisite, the mere existence of a factual dispute is, nonetheless, not alone sufficient to bar summary judgment. It is well settled that "a factual dispute does not preclude summary judgment unless ... the disputed fact is outcome determinative under the governing law." *Egger v. Phillips*, 710 F.2d 292, 296 (7th Cir.), *cert. denied*, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983). With these principles in mind, we proceed to an examination of the merits of Shlay's appeal.

■ The first argument Shlay advances is that summary judgment was inappropriate because there is a genuine issue of fact with respect to whether he was discharged in violation of the Employee Retirement Income Security Act ("ERISA"). In pertinent part, 29 U.S.C. § 1140 (1982) makes it

unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C. § 301 *et seq.*], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act.

Shlay maintains that the defendants violated this provision of ERISA by discharging him prior to the vesting of his pension rights.

This contention need not detain us long, however. It is undisputed that Shlay failed to advance this theory of recovery in the

district court. As we have noted on numerous occasions, absent exceptional circumstances, a party's failure to raise an issue in the trial court constitutes a waiver of that issue for purposes of appeal. *In re Peter Bear,* 789 F.2d 577, 579 (7th Cir. 1986); *Johnson v. Levy Organization Development Co.,* 789 F.2d 601, 611 (7th Cir. 1986). Because we find that Shlay advances no reason compelling us to examine his theory premised on section 1140 on appeal, we hold that the issue is waived.

■ Shlay's second claim is that his discharge without a hearing deprived him of a property interest in continued employment in violation of his fourteenth amendment right to due process. *See Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). We disagree. In *Roth,* the Supreme Court noted that a property interest requires more than a "unilateral expectation" of a benefit and is not created simply because a person may have "an abstract need or desire" for such a benefit. 408 U.S. at 577, 92 S.Ct. at 2709. To the contrary, to have a property interest a person must "have a legitimate claim of entitlement to it." *Id.* It is also clear that such legitimate claims for entitlements are not derived from the Constitution itself; "[r]ather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* As we noted in *Munson v. Friske, supra,* in the employment context this means that a property interest can be created in one of two ways: (1) "by an independent source such as state law securing certain benefits;" or (2) by "a clearly implied promise of continued employment." 754 F.2d at 692.

In the present case, Shlay concedes that he was not a career service employee and that therefore he has no statutory basis for his alleged property right. *See, e.g.,* Mun. Code of Chicago, ch. 25.1, §§ 25.1–3(6) and (13) (exempting employees of the Law Department from career service employee status). Although acknowledging that his alleged property interest is not statutorily based, Shlay advances two theories upon which he claims we could derive such an interest protected by the fourteenth amendment. First, he argues that at the time he was hired he was given an oral contract for career employment which would allow him to be terminated only for cause. Second, he contends that his property interest can be derived from the fact that he was accorded *de facto* tenure.

With respect to the oral contract, Shlay contends that

> it was agreed and covenanted that the position of assistant corporation counsel was a career position, and while not covered by Civil Service lawyer [sic], ... employees would not be terminated except for cause.... In addition the parties hereto agreed that the plaintiff [Shlay] would not be discriminated against because of race, color, religion, national origin, or age and would be treated fairly and equitably.

First Amended Complaint at 2. Even if we accept as true Shlay's contention that the corporation counsel gave him a career contract, it is of no legal consequence. Shlay cites to no source, and we can find none, which purports to give the corporation counsel the authority to create a career position for a person in Shlay's situation. Any promise for such a position would, therefore, be unenforceable since it is well-established that a city is generally not legally responsible for acts taken by its officers in excess of their authority. *E.g., Ganley v. City of Chicago,* 18 Ill.App.3d 248, 309 N.E.2d 653, 658 (1st Dist.1974). As the *Ganley* court recognized, "anyone dealing with a governmental body takes the risk of having accurately ascertained that he who purports to act for it stays within the bounds of his authority." *Id. See Chicago Patrolmen's Association v. City of Chicago,* 56 Ill.2d 503, 309 N.E.2d 3, 6, *cert. denied,* 419 U.S. 839, 95 S.Ct. 68, 42 L.Ed.2d 66 (1974). Accordingly, because

the oral contract would not even be enforceable against the City, Shlay cannot contend that it created a property interest for him in continued employment.

Indeed, Shlay's alleged contract giving him a career position (*i.e.*, a civil service position) would have been in contravention of Illinois law at the time he was hired. Pursuant to Ill.Ann.Stat. ch. 24, ¶ 10–1–17 (Smith-Hurd 1962 & Supp. 1986), which in relevant part was effective on the date Shlay was hired, members of the Law Department are exempted from the civil service. Moreover, as noted above, Chicago has expressly excluded members of the Law Department from civil service. Shlay's argument that he was a career employee would, therefore, contravene the express language of both paragraph 10–1–17 and the Municipal Code of Chicago.

Similarly, Shlay's alleged oral contract would also appear to be violative of Ill.Ann. Stat. ch. 24, ¶ 8–1–7 (Smith-Hurd Supp. 1986). Pursuant to this provision, which was also in effect at the time of Shlay's hiring,

> [n]o contract shall be made by the corporate authorities, or by any committee or member thereof, and no expense shall be incurred by any of the officers or departments of any municipality, whether the object of the expenditure has been ordered by the corporate authorities or not, unless an appropriation has been previously made concerning that contract or expense. Any contract made, or any expense otherwise incurred, in violation of the provisions of this section shall be null and void as to the municipality, and no money belonging thereto shall be paid on account thereof.

In presenting his case, Shlay advanced no evidence indicating that his career contract was supported by the requisite appropriation. Accordingly, we can only conclude that his contract would be in violation of paragraph 8–1–7.

■ The result of all of this is relatively simple. There is no question that contracts which are in violation of law are null and void. *See Comdisco, Inc. v. United States*, 756 F.2d 569, 576 (7th Cir.1985). Indeed, paragraph 8–1–7 expressly provides for such a conclusion. It is also clear that contracts which are null and void are incapable of creating property interests since such a contract cannot conceivably give rise to a legitimate expectation of continued employment. *See Chu v. Schweiker*, 690 F.2d 330, 334 (2d Cir.1982); *Baden v. Koch*, 638 F.2d 486, 492 (2d Cir.1980) (observing that mutual understandings cannot "create a property interest for purposes of due process when they are contrary to the express provisions of regulations and statutes"). As a result, even assuming the existence of an oral agreement, Shlay's argument that it created a protected property interest is meritless.[2]

■ The second argument Shlay makes is that his property interest was created as a result of *de facto* tenure which he enjoyed. In *Perry v. Sindermann, supra*, the Supreme Court articulated the concept of *de facto* tenure and noted that in appropriate circumstances "mutually explicit understandings" alone could create property interests protected by the fourteenth amendment. 408 U.S. at 601, 92 S.Ct. at 2699.

Shlay advances several arguments which he claims are illustrative of the *de facto* tenure accorded him by his employer. First, he contends that his oral contract providing that he would be terminated only for cause indicates the mutually explicit understanding necessary to create a property interest. We find this argument unpersuasive. In *Hadley v. County of Du Page*, 715 F.2d 1238 (7th Cir.1983), *cert. denied*, 465 U.S. 1006, 104 S.Ct. 1000, 79 L.Ed.2d 232 (1984), for example, we dealt

---

**2.** For the first time in his reply brief, Shlay appears to argue that the defendants should be estopped from challenging the validity of the alleged contract because he had relied upon it for sixteen years. We do not reach this issue, however, since it is well-established that arguments raised for the first time in a reply brief are waived. *E.g., United States v. Scott*, 784 F.2d 787, 789 n. 1 (7th Cir.1986) (per curiam).

with an issue almost identical to the one posed by Shlay. In *Hadley*, the plaintiff, a county employee, alleged that he had *de facto* tenure since several County Board members had given him assurances that he would not be terminated so long as he performed his job satisfactorily. We rejected the plaintiff's contentions that the assurances created a protected property interest:

> These assurances by Board members and superiors fail to establish a property interest in continued employment, however, as individual members of a county board in Illinois *do not* have the authority to bind a county to contracts.

*Id.* at 1242 (emphasis in original). Accordingly, we concluded that

> [a]ny claim of entitlement to public employment based on these assurances was, at best, only a unilateral expectation which is insufficient to support a property interest. Since mutuality would require an assurance from the County Board itself, and since there has been no showing that the County Board ever officially made such an offer or promise of continued employment, [the plaintiff's] attempt to establish a property interest based on the unauthorized statements of individual board members must fail.

*Id.* at 1242–43 (citation omitted).

Applying the same reasoning to Shlay's case, we conclude that, even assuming the existence of an oral contract, such an agreement is insufficient to create *de facto* tenure. As noted above, any contract made giving Shlay career employment would not have been enforceable against the City. Accordingly, and for the reasons stated in *Hadley*, any promises made to Shlay were insufficient to establish *de facto* tenure.

▉ Shlay next contends that he had *de facto* tenure as a result of his remaining in his position for sixteen years. As we stated in *Hadley*, however, " '[l]ongevity alone does not create a property interest.' " *Id.* at 1244 (quoting *Bollow v. Federal Reserve Bank of San Francisco*, 650 F.2d 1093, 1099 (9th Cir.1981), *cert. denied*, 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982)). Shlay's argument to the contrary is unfounded.

▉ Shlay's contention that he had *de facto* tenure because his salary and pension benefits had increased during his employment and because he had accrued vacation time is also meritless. Like longevity, the mere fact that the City increased compensation and benefits for its employees over the years does not give rise to a mutual understanding with respect to continued employment. We agree with the district court that simply because the City promised an employee increased remuneration if he was retained in his position cannot be translated into a promise that the employee would be retained.

▉ Finally, Shlay argues that because he was able to convince his employer not to reduce his salary one year before he was terminated demonstrates that he has *de facto* tenure. We disagree. As we noted above, simply because an employer decides to increase, or in this case not to decrease, compensation is not illustrative of the existence of *de facto* tenure. Standing alone, therefore, the City's decision not to reduce Shlay's salary did not create a property interest for him in continued employment.

▉ Shlay's next argument is that the defendants deprived him of his liberty interest in his reputation without due process by publicly disclosing that he was terminated for living outside of the City. Shlay claims that, because the reason given for his termination was merely a pretext, a stigma has been placed on his professional reputation. We find this contention without merit. We recently noted that "[i]n the context of termination coupled with defamatory statements 'a liberty interest is implicated when either (1) the individual's good name, reputation, honor or integrity are at stake by such charges as immorality, dishonesty, alcoholism, disloyalty, communism, or subversive acts, or (2) the state imposes a stigma or other disability on the individual which forecloses other opportunities.' " *Elliott v. Hinds*, 786 F.2d 298, 302

(7th Cir.1986) (quoting *Munson v. Friske,* 754 F.2d at 693). It is also self-evident that, to constitute a deprivation of an employee's liberty interest, the defamatory statements must be made public. *E.g., Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976) (a communication which was not made public "cannot properly form the basis for a claim that petitioner's interest in 'his good name, reputation, honor, or integrity' was thereby impaired") (footnote omitted) (quoting *Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971)).

In Shlay's case, the district court concluded that since Shlay was terminated in a private conference and because no reason for his termination was ever made public no liberty interest was implicated. Shlay claims that the district court erred in stating that the reason for his termination was never made public. First, he points to two newspaper articles which he claims are related to his termination. These articles report Shlay's filing of the present lawsuit in the district court. Even apart from the fact that it was the affirmative act of Shlay himself which led to these disclosures, we find Shlay's argument that these articles are illustrative of the requisite publication without foundation. As the Supreme Court has noted, since these communications were "made in the course of a judicial proceeding which did not commence until after [Shlay] ... had suffered the injury for which he seeks redress, [they] ... surely cannot provide retroactive support for his claim." *Bishop v. Wood,* 426 U.S. at 348, 96 S.Ct. at 2079. *See Paul v. Davis,* 424 U.S. 693, 710, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976).

Besides the two articles, Shlay also contends that a letter written by Corporation Counsel James Montgomery to the Illinois Attorney Registration and Disciplinary Commission constitutes the requisite publication. In this letter, written in response to a complaint filed against him by Shlay's attorney, Montgomery noted that Shlay's termination was effected because of a violation of the residency requirement. I felt that basing his termination on that violation rather than the determination that his services could no longer be utilized in the Torts Division would have a less detrimental effect on his future. Shlay now contends, among other things, that this letter places a stigma on his reputation and that it is therefore sufficient to constitute an unlawful deprivation of his liberty interest.

■■■■ Although the defendants raise numerous arguments against Shlay's position, we only need to consider one. As noted above, a statement made *after* the plaintiff has commenced an action cannot provide retroactive support for a claim upon which the plaintiff seeks relief. Our review of the record indicates that Montgomery's letter was written only after Shlay had commenced the present action. Accordingly, we reject Shlay's contention that the Montgomery letter provides the necessary element of publication to support his liberty interest claim.

■■■ Shlay next contends that the defendants have enforced the residency requirement in a selective manner against him in violation of his equal protection rights under the fourteenth amendment. He also argues that the requirement is unconstitutionally vague thereby constituting an infringement upon his due process rights.[3] The district court noted that the Illinois Supreme Court has upheld the residency requirement against a due process challenge, *Fagiano v. Police Board,* 98 Ill.2d 277, 74 Ill.Dec. 525, 456 N.E.2d 27 (1983), and that Shlay failed to offer "any reason to doubt the correctness of that decision." Mem.Op. at 7. Similarly, the court concluded that Shlay failed to present "any evidence from which it could be inferred that the City has administered its residency requirement in a way that vio-

---

**3.** In the district court, Shlay apparently also argued that he did not have adequate notice of the residency requirement. He does not raise this point on appeal and we therefore have no opportunity to consider it.

lates the protection against 'intentional invidious discrimination by the state against persons similarly situated.'" *Id.* (quoting *Ciechon v. City of Chicago,* 686 F.2d 511, 522–23 (7th Cir.1982)).

On appeal, Shlay has failed to present any argument or to adduce any evidence which would lead us to believe that the trial court erred in granting summary judgment with respect to the equal protection and due process claims.[4] Accordingly, we uphold that decision.[5]

■ Finally, in the district court, Shlay alleged that his termination was politically motivated in violation of the consent decree entered in *Shakman v. Democratic Organization of Cook County, supra.* The district court concluded that "Shlay's complaint contains only his belief that *Shakman* has been violated and its vague allegations fall far short of the particularity required to state a *Shakman* claim." Mem.Op. at 6–7. On appeal Shlay raises no challenge to this ruling by the district court and we therefore have no occasion to consider the propriety of the trial court's decision.[6]

### III.

For the reasons stated above, the decision of the district court granting summary judgment in favor of the defendants is

Affirmed.

4. Shlay places heavy reliance on an earlier ruling in this case in which the district court stated that the reason given for his termination (*i.e.,* residency) was a mere pretext. The trial judge also noted:

> Were Shlay able to demonstrate that the stated reason for his discharge was a pretext for some *impermissible* basis for his discharge, he would succeed on his equal protection claim. However, the current record consists of a showing that the City's stated reason is a pretext for another proper basis for Shlay's discharge.

Nonetheless, at oral argument, the defendants asserted that the sole reason for Shlay's dismissal was his violation of the residency requirement.

Shlay contends that this dispute requires that we reverse the district court's grant of summary judgment. We disagree. Even if the residency issue was merely a pretext, Shlay fails to advance any timely arguments properly supported by specific facts which would indicate that he was dismissed for an impermissible reason. Accordingly, the decision of the trial court must be upheld.

5. Intermingled with his equal protection and due process arguments, Shlay raises, apparently for the first time in this summary judgment proceeding, a first amendment claim. Shlay appears to contend that the defendants acted to punish other assistant corporation counsel for cooperating with Shlay in the present action. In fact, these allegations apparently formed the basis for motions, which the district court denied, seeking a preliminary injunction, a protective order and an order holding James Montgomery in contempt for allegedly tampering with Shlay's witnesses. Among other problems with this claim, our review of the record indicates that it was never raised as an issue before the trial court in the present summary judgment proceeding. We therefore have no opportunity to consider the merits of Shlay's first amendment claim.

6. Shlay also alleges on appeal that, in investigating his residency, the defendants violated his rights under the Illinois Personal Records Act. *See* Ill.Ann.Stat. ch. 48, ¶ 2009 (Smith-Hurd 1986). This pendent claim, among others, was dismissed by the district court for lack of an independent basis of federal jurisdiction after summary judgment was entered on all of Shlay's federal claims. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.") (footnote omitted). Shlay does not contend nor do we believe that the district court abused its discretion in dismissing the Records Act claim for lack of jurisdiction. Accordingly, we are without jurisdiction to consider the merits of that claim now.