**UNITED STATES of America, Plaintiff,**

v.

**ZEIGLER COAL HOLDING COMPANY, Defendant.**

No. 95–CV–334–WDS.

United States District Court, S.D. Illinois.

Jan. 18, 1996.

Order Denying Reconsideration June 17, 1996.

Douglas W. Snoeyenbos, U.S. Department of Justice, Tax Division, Washington, DC, for plaintiff.

Rebecca R. Jackson, John P. Barrie, Juan D. Keller, Bryan Cave, L.L.P., St. Louis, MO, for defendant.

### MEMORANDUM AND ORDER

STIEHL, District Judge:

Before the Court is plaintiff's motion for summary judgment.

### BACKGROUND

On March 8, 1993, defendant submitted amended tax returns claiming refunds of federal income taxes paid for several years, including 1986 and 1987. Defendant's claims for refund were based on claimed entitlement to investment tax credits (hereinafter "ITC"), on the acquisition of personal property with a cost basis of $1,862,351 for 1986, and $4,131,-162 for 1987. Based on those returns, on April 27, 1993, defendant was sent refunds of tax and interest for the years 1986 and 1987 in the amount of $110,293.61 and $36,388.97 respectively.

On January 30, 1995, during the course of an income tax examination, the IRS made an information document request of defendant to provide documentation of its claims for investment tax credit for years including 1986 and 1987. On March 8, 1995, defendant responded to the IRS's information document request by letter, and included copies of six coal supply contracts between defendant and its customers. Defendant also provided the IRS with a copy of its Long Range Plans for the years 1985 through 1989, including a capital expenditures summary. From all of the information available to it, the IRS compiled exhibits setting forth the description and cost basis of most of the specific items of personal property upon which defendant claimed ITC in 1986 and 1987. The IRS was unable to identify such personal property having a cost basis totalling $80,505 for 1986, and $21,106 for 1987, upon which the claims for refund were based.

### SUMMARY JUDGMENT STANDARDS

Fed.R.Civ.P. 56(c) provides that a district court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In determining whether a district court properly granted summary judgment, "[a]ll factual inferences are to be taken against the moving party and in favor of the opposing party." *International Adm'rs, Inc. v. Life Ins. Co. of N. Am.,* 753 F.2d 1373, 1378 (7th Cir.1985). In instances in which "inferences contrary to those drawn by the trial court might be permissible," a district court's grant of summary judgment must be reversed. *Munson v. Friske,* 754 F.2d 683, 690 (7th Cir.1985). Once a motion for summary judgment has been made and properly supported, however, the nonmovant does have the burden of setting forth specific facts showing the existence of a genuine issue of a material fact for trial. *See* Rule 56(e); *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983), (noting that "a bare contention that an issue of fact exists is insufficient to raise a factual issue"). Although a requisite, the existence of a factual dispute is not, standing alone, sufficient to bar summary judgment. It is well settled that a "factual dispute does not preclude summary judgment unless ... the disputed fact is outcome determinative under the governing law." *Egger v. Phillips,* 710 F.2d 292, 296 (7th Cir.), *cert. denied,* 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983), *cited in Shlay v. Montgomery,* 802 F.2d 918, 920 (7th Cir.1986). In addition, the parties agree that in a suit over erroneous refunds of federal income taxes, the United States bears the burden of proof. *United States v. Com-*

*mercial Bank of Peoria,* 874 F.2d 1165, 1169 (7th Cir.1989).

### INVESTMENT TAX CREDIT

Under § 49(a) of the Internal Revenue Code (Code), as amended by § 211(a) of the Tax Reform Act of 1986 (Act), the regular investment tax credit no longer applied to property placed in service after December 31, 1985. Section 49(b)(1) provides, however, that the repeal of the ITC in § 49(a) does not apply to "transition property" as defined in § 49(e), and thus transition property is still eligible for ITC.

Section 49(e)(1) of the Code defines the term "transition property" as:

> [A]ny property placed in service after December 31, 1985, and to which the amendments made by section 201 of the Tax Reform Act of 1986 do not apply, except that in making such determination—

> .  .  .  .  .

> (B) section ... 204(a)(3) of such Act shall be applied by substituting "December 31, 1985" for "March 1, 1986," . . . .

In general, the definition of "transition property" under § 49(e)(1) of the Code relies on the transitional rules provided under the revised Act's provisions in §§ 203, 204 of the Act.

Under § 204(a)(3) of the Act, as modified by § 49(e)(1)(B), "§ 201 shall not apply to any property which is readily identifiable with and necessary to carry out a written supply or service contract, or agreement to leave, which was binding on [December 31, 1985]." [1] Accordingly, defendant would be entitled to an ITC only to the extent the property upon which it claimed the ITC was readily identifiable under the coal supply contracts.

■ Unfortunately, the phrase "readily identifiable" is not further defined in the Code, Regulations, or the Act. Moreover, the Court has been unable to find any cases in this circuit, or any other circuit for that matter, which would aid the Court in its analysis. As a result, the Court relies upon the legislative history for guidance. The meaning of the phrase "readily identifiable" in § 204(a)(3) is explained in the conference committee report. (H.R.Rep. No. 841, 99th Cong., 2d Sess. pt 2, at 60 [1986], *reprinted in* 1986 U.S.C.C.A.N. 4075, 4148). The report states that the transition rule "is applicable only where the specification and amount of the property are readily ascertainable from the terms of the contract, or from related documents." *Id.* at 60. Thus, as plaintiff correctly assets, in order for the property claimed by defendant to be eligible for the ITC under § 204(a)(3), the property must be "readily identifiable" with the supply contracts, and "the specifications and amount of the property" must be "readily ascertainable from the terms of the contract, or from related documents."

### ANALYSIS

■ Plaintiff argues that "[t]he specifications and amount of the property with respect to which Zeigler claimed ITC ... are not readily ascertainable from the terms of any of Zeigler's eligible coal supply contracts." Plaintiff goes on to specifically list several items upon which defendant claimed ITC that were not referenced in any of the contracts or related documents. Plaintiff has failed, however, to acknowledge that some of the property upon which defendant claimed ITC is in fact listed in some of the contracts. For example, the contract between defendant and National Distillers specifies certain property, including finished steel mill products, mine roof bolt, mining machinery parts, and electrical machinery and equipment.

Construed in the light most favorable to the non-moving party, the Court finds that plaintiff has not satisfied its burden of proof under *Commercial Bank of Peoria,* 874 F.2d 1165. Because at least some of the property is readily ascertainable from the contracts, to grant summary judgment in favor of plaintiff at this time would be improper. At a minimum, plaintiff should undertake to show which property is part of the contract, and which property is not otherwise readily ascertainable.

---

**1.** § 211(e)(1)(B) provides that for transition property potentially eligible for the ITC, December 31, 1985, is to be substituted for the reference to March 1, 1986, in §§ 203(b)(1), 204(a)(3).

The Court acknowledges the validity of plaintiff's argument that to allow a supply contract to implicitly require the acquisition of property, means that the transition rule exception would swallow the rule eliminating the ITC. As a result, the Court agrees with plaintiff that in order to be eligible for ITC, the property must have been specifically described. The Court notes that it could not find any references in the contracts that are part of the record which describe most of the property upon which the ITC was claimed. Nevertheless, because it is plaintiff's burden to demonstrate that neither the contract nor any other related documents readily identify the property, to grant summary judgment would relieve plaintiff of its burden.

Accordingly, plaintiff's motion for summary judgment is **DENIED.**

**IT IS SO ORDERED.**

### *ORDER ON RECONSIDERATION*

Before the Court is the government's motion to reconsider the Court's Order dated January 18, 1996, denying the government's motion for summary judgment. In support thereof, the government asserts that the Court appears to have misread a contract, contained in the Court file, in making its January 18 ruling.

The Court, having considered the government's motion and the response thereto, cannot construe the contract differently. On page 19 of the contract, the plain language provides that "the base price shall be increased or decreased by an amount … for the following products…." The contract spells out several products, all of which were listed on Zeigler Coal's capital expenditure charts contained in the Court file. The Court again notes that it could not find references describing most of the property upon which the ITC was claimed. Despite this, it is the government's burden to demonstrate that neither the contract nor any other related documents readily identify the property. To grant summary judgment at this point would relieve the government of its burden.

Accordingly, the government's motion to reconsider is **DENIED.**

**IT IS SO ORDERED.**