# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 02-3862

JAMES PHELAN,

Plaintiff-Appellant,

v.

CITY OF CHICAGO,

Defendant-Appellee.

———————

Appeal from the United States District Court for the
Northern District District of Illinois, Eastern Division.
No. 99 C 40—**Ian H. Levin**, *Magistrate Judge.*

———————

ARGUED SEPTEMBER 12, 2003—DECIDED OCTOBER 21, 2003

———————

Before BAUER, KANNE and EVANS, *Circuit Judges.*

BAUER, *Circuit Judge.* The plaintiff James Phelan brought suit after being dismissed from his position of "ward superintendent" by the City of Chicago. Phelan claimed that the City 1) violated the Due Process Clause, 2) breached the Family and Medical Leave Act, and 3) violated Title VII of the Civil Rights Act. The district court granted the City's motion to dismiss Phelan's first two causes of action and disposed of the third on summary judgment. Phelan appeals. We affirm.

## BACKGROUND

Phelan was employed in two separate positions by the City of Chicago. In 1992 he was hired by the City as a police officer. In October 1993 the Chicago Police Department granted him a leave of absence. In November 1995, while he was on leave from the Police Department, Phelan was hired by the City's Department of Streets and Sanitation to work as ward superintendent for the 23rd Ward. Phelan worked full time as ward superintendent until July 1997 at which time he took leave because of personal health problems. Phelan exhausted all of his sick days but was still unable to return to work. In September 1997, he applied for and was granted leave under the Family and Medical Leave Act ("FMLA").

In September 1997 Phelan was indicted for mail fraud. Shortly after his indictment, City personnel requested that he resign. When he refused to resign, the City fired him. Phelan's discharge was processed the same day that he officially returned from his FMLA leave. On October 27, 1997, Phelan requested that the City reinstate him to his position as a probationary police officer. The City notified Phelan that he no longer had employment with the Police Department. Phelan then filed suit.

## ANALYSIS

This court reviews the district court's granting of motions to dismiss the Due Process and FMLA claims under a de novo standard of review. *See Hickey v. O'Bannon*, 287 F.3d 656, 657 (7th Cir. 1999). In reviewing the district court's decision, this court must accept all well-pleaded facts alleged in the complaint as true and must draw all reasonable inferences in favor of the non-movant. *Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 782 (7th Cir. 1999). A motion to dismiss will succeed when "it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Similarly, this court reviews the district court's dismissal of the Title VII claim via summary judgment de novo. *Grayson v. City of Chicago*, 317 F.3d 745, 749 (7th Cir. 2003). All facts will be viewed in a light most favorable to the non-moving party, and summary judgment will be upheld if there is no genuine issue of material fact. *Id.*

## A. Due Process Claim.

Phelan claims that the City's termination of his employment violated his Fourteenth Amendment Due Process rights when the departments terminated him from his positions as ward superintendent and police officer without notice or a hearing. The Fourteenth Amendment states that no state shall "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. CONST. amend. XIV, § 1. In order to assert a violation of the Due Process clause, a plaintiff must be able to show that 1) he or she had a "property interest" and 2) that he or she was deprived of this interest without due process of law. *Bishop v. Wood*, 426 U.S. 341, 343 (1976).

In the employment context, a property interest can be created in one of two ways, "1) by an independent source such as state law securing certain benefits; or 2) by a clearly implied promise of continued employment." *Shlay v. Montgomery*, 802 F.2d 918, 921 (7th Cir. 1986) (quoting *Munson v. Friske*, 754 F.2d 683, 692 (7th Cir. 1985)), *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). Phelan is unable to state that he has any interest in his employment via the first method for creating a property interest. In his pleadings, Phelan bases his claim to a property interest on sections 2-100-110 and 2-74-060 of the Municipal Code.

These sections state the applicable procedures for termination of "career service" employees. Unfortunately for Phelan, his employment in the capacities of a police officer and a ward superintendent are not classified as "career service" positions; rather they are "exempt" and not entitled to any procedures for dismissal. R.74 at Exh. K ¶¶3, 5. Specifically, the Municipal Code distinguishes "career service" employees and all other "career service exempt" employees. Municipal Code of Chicago § 2-74-030. Only those employees in career service are afforded procedural protections for their employment. Municipal Code of Chicago § 2-74-060. Hence, Phelan has no property interest in his position that was created by any state or city law; he was an at will employee.

Absent an express agreement, an at will employee may still prove a property interest in his or her employment under the second test if there is a "clearly implied promise in their continued employment." *Shlay*, 802 F.2d at 921, *Perry v. Sindermann*, 408 U.S. 593 (1972). In cases regarding at will employees, in order to demonstrate that there is an interest, a plaintiff must show more than a "unilateral expectation" or an "abstract need or desire" for the employment. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). In his amended complaint, Phelan asserts that he was "hardworking, productive, and effective in the position of Ward Superintendent" and that he "received favorable performance evaluations and merit salary raises." Amended Complaint at ¶7. This court has made it clear that these contentions are not enough to meet the test for an implied contract. Specifically, in *Shlay*, we stated that because the Chicago's City Code explicitly defines different categories of employees as "career service" or "career service exempt," other City employees cannot make promises, implied or otherwise, of continued employment that are contrary to the Code. *Shlay*, 802 F.2d at 921-22 (discussing why a "career service exempt" employee of the City of

Chicago did not have a property interest in his continued employment). Additionally, this court found that other factors such as longevity of service, good performance reviews and periodic salary increases are insufficient to show a property interest in continued employment. *Id.* at 922.

Phelan argues that under the notice pleading standard of the Federal Rules of Civil Procedure, he need not state facts to show that he has a property interest in his employment. This court has noted that, although pleading standards are relaxed, a plaintiff must still plead "sufficient facts . . . to allow the district court to understand the gravamen of the plaintiff's complaint." *Kyle v. Morton High School*, 144 F.3d 448, 455 (7th Cir. 1998) (quoting *Doherty v. City of Chicago*, 75 F.3d 318, 326 (7th Cir. 1996). Even under the relaxed standards, Phelan has not met these minimum requirements in light of our earlier holding in *Shlay*. Based on the pleadings, it is clear that he cannot show any facts to prove that his Due Process rights were violated.

### B. FMLA Claim

Phelan's second claim is that his dismissal violates the FMLA. The district court granted the City's motion to dismiss this claim. We affirm the district court's ruling.

Enacted in 1993, the FMLA was designed to allow employees to take periods of leave from their jobs for various health and family related reasons. In furtherance of this goal, the Act allows both for the employee to take leave and to be reinstated when his or her leave is finished. Specifically, the Act allows a worker to take unpaid leave for a period of up to twelve weeks for reasons that include the birth of a child, the illness of an immediate family member, or the serious health condition of the employee himself. 29 U.S.C. § 2612(1). Upon return the employee is guaran-

teed reinstatement to the employee's original position or an "equivalent position." 29 U.S.C. § 2614(1). The FMLA, however, does not entitle any employee to "any right, benefit, or position of employment other than . . . [that] which the employee would have been entitled had the employee not taken leave." 29 U.S.C. § 1614(3).

In the case at hand, Phelan elected to take leave under the FMLA for a period of time from September 12, 1997 to October 16, 1997. When he returned to work in October, he was terminated. The City states that prior to Phelan's absence, the quality of his work had been poor, and during his absence the employee hired to fill in for Phelan was more satisfactory. For these reasons, the City chose to terminate Phelan.

In cases such as this where an employee is terminated while taking FMLA leave, the trial court must determine whether the termination was illegally motivated by the employee's choice to take leave, or whether the termination was motivated by other, valid reasons. *Kohls v. Beverly Enterprises Wisconsion, Inc.*, 259 F.3d 799, 804 (7th Cir. 2001). Specifically, we have stated that:

> With no absolute right to reinstatement, whether an employer violates the FMLA turns on why the employee was not reinstated. Clearly, an employee may not be fired because she took leave—that would be in direct violation of the statute. However, an employee may be fired for poor performance when she would have been fired for such performance even absent her leave.

*Id.* at 805.

In this case, the distinction is an easy one. Plaintiff concedes that he was terminated because of the poor quality of his work. Appellant's Brief at 14-15. The City noted reports made by superiors that Phelan was not managing his

assigned ward correctly, that he was unable to work effectively with others, and that he "simply wasn't getting the job done." Appellant's Brief, Short Appendix, at 37. More specifically, the City noted complaints against Phelan stating that he relied too heavily on employees working under him, he was difficult to get a hold of via radio or pager (the normal means to contact ward superintendents), and he refused to drive the city van during working hours; Phelan was ultimately suspended for three days due to similar problems prior to taking his medical leave. *Id.* at 33-35. Phelan argues that his termination violates the FMLA because it was made *while* he was on FMLA leave. More specifically, Phelan asserts that the City decided to terminate him for poor performance only after seeing how much better his temporary replacement could perform his job. This, Phelan asserts, is an improper motivation for his termination.

This court directly addressed a similar situation in *Kohls.* In that case, an employee at a nursing home took approximately two months of leave under the FMLA. *Id.* at 802. While the employee was on leave, the nursing home hired a replacement who performed the job better than the employee. *Id.* When the employee returned to work, she was terminated. *Id.* This court held that the termination did not violate the FMLA, specifically noting that:

> . . . [the employer's] preference for [the replacement] does not itself demonstrate that [the employee] would not have been terminated if she had not taken leave. [The employer] would have been entitled to fire [the employee] for mismanagement and mishandling of funds regardless of whether she had taken leave or not.

*Id.* at 806. Put simply, an employee is not afforded greater rights than he would otherwise have merely because he takes FMLA leave. Hence, it is not in violation of the FMLA

for the City to dismiss Phelan for poor performance, regardless of when the City came to that decision. For this reason, the district court's granting of the motion to dismiss was proper. Phelan failed to allege any facts that, if taken as true, would constitute a violation of the FMLA.


*C.  Equal Protection Claim*

Finally, Phelan, a Caucasian man, argues that his dismissal violated Equal Protection provided by the Fourteenth Amendment and § 1983 because the City of Chicago treated him unfairly due to his race. The district court granted the City's motion for summary judgment regarding this claim.

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual . . . because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). An employee may show such incidents of illegal discrimination through direct proof, or in the absence of such proof, an employee may make a case with sufficient indirect proof, and upon doing so, switch the burden of proof to the employer. In this case, Phelan proceeds with indirect proof.

The first test developed by the Supreme Court for showing employment discrimination through indirect proof was established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under that decision, the plaintiff must first demonstrate facts that build a prima facie case of discrimination. The prima facie case consists of a showing by the plaintiff

> (i)  that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*McDonnell Douglas Corp.*, 411 U.S. at 802. Over time, courts have modified the test to fit a variety of situations. Recently, the Seventh Circuit modified the test to apply to situations where members of majority groups believe they were subject to employment discrimination. *Mills v. Health Care Service Corp.*, 171 F.3d 450, 457 (1999). This court noted that in such cases of "reverse discrimination," the first prong of the *McDonnell* test cannot be used. *Id.* In its stead, a plaintiff must show "background circumstances" that demonstrate that a particular employer has "reason or inclination to discriminate invidiously against whites"or evidence that "there is something 'fishy' about the facts at hand." *Id.* at 455 (quoting *Harding v. Gray*, 9 F.3d 150, 153 (D.C. Cir. 1993)).

Phelan argues that this new and different prong imposes an unfair burden to non-minority plaintiffs since a non-minority plaintiff must establish more facts to create the prima facie case. Indeed, this circuit considered that issue in determining how to modify the *McDonnell Douglas* test to fit incidents concerning reverse discrimination. *Mills v. Health Care Service Corp.*, 171 F.3d 450, 456-57 (7th Cir. 1999). However, this court has recognized that discrimination by employers against white men is a less common phenomenon than discrimination against minorities. *Id.* For that reason, in order to gain the substantial benefits conferred by the use of the *McDonnell Douglas* test,[1] the non-minority plaintiff must be able to plead facts to show why it is likely in this case, that an employer had engaged in such unusual behavior. This court stated explicitly that "this modified test is not to be interpreted in a constricting fashion . . . [i]t in no way precludes any plaintiff with direct

---

[1] The *McDonnell Douglas* test was created to remedy discrimination against groups that have historically suffered; the test is a powerful tool to do so because it creates an inference of discrimination on the part of employers in the absence of direct evidence of discrimination. *Id.*

evidence of discrimination from bringing his claim." *Id.* at 457. Hence, Phelan must be able to show direct evidence of the racial discrimination waged against him, or meet all the elements of the prima facie case as outlined in *Mills*.

Applying this modified prima facie test to the case at hand, Phelan is unable to demonstrate the necessary "background circumstances"; that is to say, he does not state that there is reason to believe his superiors within the City of Chicago would be inclined to discriminate against white men. Phelan is a white man; his superiors were white men; the worker selected by these superiors to replace Phelan was a white man. Additionally, Phelan cannot show that there was anything "fishy" about his termination that would suggest reverse discrimination. The City stated that an abundance of poor work habits led to his dismissal. Phelan argues that the City's proffered reason was false, and alternatively that he was dismissed because his replacement was better than him, or that he was dismissed because of the criminal indictment levied against him. Even if Phelan is correct in asserting that the City misrepresented its "real" reason for terminating Phelan in this way, neither of these alternate theories provide "fishy" circumstances that raise an inference of racial discrimination—or any illegal or improper behavior for that matter.

Phelan also argues that according to a recent case, *Hunt v. City of Markham, Ill.*, 219 F.3d 649 (7th Cir. 2000), this Circuit did not require a showing of unusual background circumstances. Phelan misunderstands this case. In *Hunt*, this court did not apply the *McDonnell Douglas* test because the plaintiffs had direct evidence of discrimination,[2] and

---

[2] In their complaint, the plaintiffs stated that the city officials openly discriminated against them and made such statements as "it is the blacks' turn to self-govern in Markham, and if you are white, get out" and "it is our turn; you are the minority now; you

(continued...)

hence did not need the aid of *McDonnell Douglas*. *Id.* at 652. Unlike Hunt, Phelan does not offer any such direct proof. Had he done so, he would be correct in arguing that he need not meet the modified *Mills* test. In the absence of such an offer, *Hunt* is of no help to Phelan.

For these reasons, we AFFIRM.

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

---

[2] (...continued)
lost, you might as well move out; we don't owe you nothing." *Hunt v. City of Markham, Ill.*, 219 F.3d 649, 652 (7th Cir. 2000).